Coe and others, TRUSTEES, *vs.* THE NEW JERSEY MIDLAND RAILWAY COMPANY.

1. An application by receivers of an insolvent railroad to issue certificates of indebtedness to cover certain expenses, and an order of the court thereon accordingly, does not bind the receivers or the trust fund to pay particular items of such expenses, the propriety of whose payment was not before the court.

2. Application to compel the receivers of an insolvent railroad company to deliver to creditors certain certificates of indebtedness, which the receivers were authorized by this court to issue, and which they had offered to such creditors in payment of rolling stock, and which the creditors had accepted, refused; the creditors having had it in their power to retake their property at any time, and it appearing that it would have been to the disadvantage of the trust fund for the receivers to have paid the contract price.

---

On petition of The Rhode Island Locomotive Works Company, for an order requiring the receivers of the defendants to

deliver to the petitioners certain certificates of indebtedness, which the receivers were authorized by this court to issue, and to which the petitioners claim to be entitled.

*Mr. Cortlandt Parker,* for petitioners.

*Mr. Ashbel Green,* for receivers.

THE CHANCELLOR.

The respondents are the receivers appointed in this suit on application of the complainants, as mortgagees. One of them, Mr. Garret A. Hobart, was, previously to the filing of the bill in this cause, appointed receiver for the creditors and stockholders of the defendants, under proceedings taken under the act " to prevent frauds by incorporated companies." The petitioners, The Rhode Island Locomotive Works Company, on or about the 13th of January, 1875, entered into an agreement with the defendants, by which they furnished to the latter ten locomotive engines and tenders, as upon lease, but with the agreement that on payment in full of the rent reserved, ($119,536.36,) they should be the property of the defendants. The rent was payable in installments, between the date of the agreement and the 5th of January, 1876, and the defendants gave to the petitioners their notes for the amount of it. At the time of the appointment of the receiver in insolvency there was, according to the petition, due to the petitioners for rent about $120,000. The locomotives and tenders were then in the possession of the receiver, and (except one of the locomotives, which had been so damaged by fire as to be useless,) were in use on the road. Nothing has been paid to the petitioners since then. The petitioners base their claim to the relief they seek, on the ground that, shortly after his appointment, the receiver in insolvency requested them to leave the locomotives and their tenders in his possession, for use on the road, he guaranteeing that he would keep them in good order, and promising to apply to the Chancellor for authority to pay their claim for

rent under the lease; on the faith of which undertaking they permitted the property to remain in his hands; that subsequently, application was made by the receivers appointed in this cause, (which is a suit for the foreclosure and sale of mortgaged premises) for authority to issue certain certificates of indebtedness, to be used for the purposes of their trust, among which was the payment of the rent which had become due, and was unpaid, and that which would accrue up to the 31st of December, 1875, in all $28,300.23.

Of the rent reserved, $85,354.68 did not, by the terms of the lease, become due until the 5th of January, 1876. The authority for issuing the certificates was obtained, and one of the receivers applied to the treasurer of the petitioners, stating that the receivers found difficulty in negotiating the certificates, and suggested that the petitioners should take them as so much money. It is alleged that before that communication was made, the receivers had offered to deliver the certificates in payment of so much of the rent, and the offer was accepted, but the certificates were not sent. The receivers admit, by their answer, the foregoing facts, substantially.

They allege, however, that they have been warned and notified by persons interested in the first mortgage bonds of the defendants not to pay the rent or deliver the certificates therefor, because, as is alleged, the property is not worth the amount agreed to be paid for it, but a very much less sum, and the receivers say they have ascertained that it is not for the interest of the trust which they represent that the rent should be paid.

The petitioners have no equity arising from the conduct of the receivers to have the agreement between them and the defendants specifically performed, without regard to advantage or disadvantage to the trust fund. The most that can be said of the transaction is, that the petitioners were induced by the hope, and, perhaps, reasonable expectation engendered by the statements of the receivers, to leave their property in the possession of the receivers for use on the road. It was alleged on behalf of the receivers, on the argument, and was not denied,

that the property is in better condition than it was when it came to the hands of the receivers. It has been in the power of the petitioners, at all times since the appointment of the receivers, to retake their property, and sell it to raise the amount remaining due to them.

The receivers do not appear to have contracted to purchase the property. They appear to have been willing, up to the time when they were warned not to do so, to pay for it according to the agreement between the petitioners and the company.

It might have been a very improvident act on their part to have paid the rent under the lease. If the allegations made in their answer are true, it would have been. The fact that they applied for leave to issue certificates to pay the rent neither binds them nor the trust. The question as to the propriety of paying the rent was not before the court. The propriety of making provision to cover that and other expenses, was. There is nothing in the application of the receivers, and the order in pursuance of it, to bind the trust estate to the payment of the rent to the petitioners under the lease.

I am unwilling to grant the prayer of the petition until I shall be satisfied that it is for the interest of the trust that it should be done. If the petitioners are willing to accept for the property in the hands of the receivers what it is in fact worth, irrespective of the price fixed in the agreement, and to allow on account of such price what has been received by them on account of rent, the receivers will be authorized to purchase the nine locomotives and tenders of them at their true value, and pay for them in the certificates.

And, in any event, the petitioners will be allowed just compensation for the use of the property since it has been held by the receivers.